## DUNCAN et al. v. ST. JOHN LEVEE & DRAINAGE DIST. et al.

### No. 9736.

Circuit Court of Appeals, Eighth Circuit.
Feb. 23, 1934.

R. L. Ward, of Caruthersville, Mo., and Fred Switzer, Jr., and Thomas W. White, both of St. Louis, Mo. (Ward & Reeves, of Caruthersville, Mo., and Fordyce, White, Mayne & Williams, of St. Louis, Mo., on the brief), for appellants.

Charles Claflin Allen, Jr., of St. Louis, Mo., and R. F. Baynes, of New Madrid, Mo. (O. W. Joslyn, of Charleston, Mo., and Sharp & Baynes, of New Madrid, Mo., on the brief), for appellees.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge.

In 1914 the St. John Levee & Drainage District of Missouri, a municipal corporation, was organized under the provisions of article 9, chapter 41, of the Revised Statutes of Missouri 1909 (section 5703 et seq.), and amendments thereto. Its general plan for reclamation, adopted April 15, 1914, provided for the construction of levees along the Mississippi river, and a number of ditches for the protection and drainage of certain lands in New Madrid and Mississippi counties, Mo. About 205,000 acres were included within the boundaries of the district. The usual practice in such proceedings was followed. March 30, 1915, the report of the commissioners, appointed to assess benefits and damages, was, after hearings, approved by the circuit court of New Madrid county, in which county the district had been incorporated. The benefits assessed were against all the lands of the district and were such as were found to accrue by reason of carrying out the general plan of reclamation theretofore adopted. Beginning with July, 1915, bonds were issued to provide funds for the payment of the work incidental to carrying out this reclamation plan; and the board of supervisors of the district appropriated to the payment of this bond issue a sufficient amount out of the total tax levied against all the property upon which benefits were assessed. The board also provided that the proceeds of the several installments of the taxes thus appropriated should be preserved by the treasurer of the district in a sinking fund to be applied and used exclusively to the payment of the interest and principal of the bonds for which the appropriation was made, and for no other purpose. Subsequently nine additional bond issues were put out by the district with sinking fund

provisions. It is the fourth issue that this litigation specifically concerns.

In 1920 the chief engineer of the district made the following report to the board of supervisors:

"There are lands within this district that are in need of reclamation in order to render them fit for cultivation and that the expense and damages in reclaiming said lands will be less than the benefits accruing to the lands assessed and benefited thereby."

And further, "that the only lands that will be benefited or damaged by the proposed change are as follows." There was here subjoined a list of lands in the district aggregating about 6,500 acres, designated throughout record and briefs as the "Hough Area," by which name the tract affected will, for convenience, be referred to. This report was accepted by the board, and the attorneys of the district were directed to file a petition in the circuit court of New Madrid county for permission to amend the plan of reclamation as recommended, and to do all things necessary under the law in furtherance thereof. The petition was filed, describing the same lands, and alleging that they were the only lands that would be affected by the construction of certain additional local drainage ditches, the construction of which constituted the only change prayed for in the original plan of reclamation. The court was asked so to find and decree. That decree contained the following findings:

"The Court further finds that said ditches when constructed will benefit the public health and will be of general public benefit and utility and that the lands hereinafter set out are now wet and overflowed lands, not fit for cultivation and a menace to the public health and that the digging of said ditches will reclaim said lands from the effects of water and that the damages and expenses of digging said ditches will be less than the benefits accruing to the lands affected and benefited thereby.

"The court further finds that the only lands which will be affected by the construction of said ditches, either by benefits thereto or by damage by reason of additional right of way required, will be the following described lands in New Madrid County, Missouri, to-wit."

Here follows a description of the same Hough Area, together with the appointment of commissioners to appraise said lands and to assess benefits and damages. The report of the commissioners was filed November 22, 1920. It assessed benefits against the

same lands and no other, and notice of hearing was given only to persons interested in these lands, who were afforded opportunity to examine the report and to file such exceptions as are provided by law. November 5, 1920, the court entered its decree, finding that no exceptions had been filed and confirming the report of the commissioners. It authorized the district to enter upon said lands and to construct and maintain the proposed ditches and drains upon its payment of the amount of damages awarded to the persons owning the land taken. December 6, 1920, pursuant to this decree, the board of supervisors adopted the following resolution:

"Whereas, it appears to this Board that in order to complete the proposed additional drainage works and improvements and provide for the payment of the probable working and administrative expenses and damages in the completion of such works and improvements in accordance with the amendment to the plan for reclamation hereinbefore mentioned, the payment of the principal of the proposed $80,000 bond issue and the amount of interest which will accrue on the same, it will be necessary to levy 118% of the assessed benefits as confirmed by the Circuit Court in New Madrid County, Missouri, on November 5th, 1920, as aforesaid so as to produce a sum of $160,247.

"Now, Therefore, Be It Resolved and Ordered by The Board of Supervisors of the St. John Levee and Drainage District of Missouri, that the said sum of $160,247 be and the same is hereby levied against said lands and other property in said St. John Levee and Drainage District of Missouri against which benefits have been assessed on account of the additional ditches provided for in the amendment of the plan for reclamation hereinabove mentioned to and against each tract of land shown to be benefited by the proposed work in the Commissioner's report as confirmed by the Circuit Court of New Madrid County, Missouri, on November 5th, 1920, such tax to be apportioned to each tract of land in proportion to the benefits assessed and confirmed and to be payable in annual installments as the law directs."

The bonds, aggregating $80,000, issued pursuant to this resolution, each for the sum of $1,000, contained the following recital:

"This bond and the other bonds and coupons forming a part of this issue are payable out of the proceeds of taxes heretofore legally levied upon the lands and other property within said district declared to be benefited by said additional drainage system."

Appellant owns bonds of this fourth issue in the sum of $6,000. The first three bond issues aggregated $900,000. Issues five to ten, inclusive, amount to $566,000. For a time the district board put the taxes collected from all lands in the district into one sinking fund, from which it made payments upon all bonds issued. It is clear that all issues except the fourth are general bonds of the district, and, as such, are payable out of the general sinking fund. In 1927 the board created a separate fund in which were placed the proceeds of taxes collected from the Hough Area. This was called the "Hough Sinking Fund." This fund has since been held subject to the payment of principal and interest of the $80,000 bond issue. The lands in the Hough Area are delinquent in the collection of taxes, and payment of the fourth bond issue from the general fund cannot be made without injury to the holders of the other general bonds of the district. In the agreed statement of facts it is stipulated that:

"There are in the territory of defendant levee district many thousands of acres of land delinquent, and the taxes against many thousands of acres of land in said district may be lost and that there is a chance that none of the bond issues will be paid in full. And all lands comprising said 6567 acres were assessed by the decree of March 1920, and are and have been delinquent in payment of taxes since 1926."

Because of this condition, and because, in its judgment, payment of principal and interest of the $80,000 bond issue is restricted to taxes collected from the lands in the Hough Area, the district refuses to pay principal and interest coming due on that issue from the general sinking fund. July 2, 1928, appellant filed in the district court for the Eastern District of Missouri a bill of complaint on behalf of herself and others similarly situated, in which it is sought to have the bonds of the fourth issue paid out of the general sinking funds, or other general funds of the district; that the district, its board of supervisors and officers, be enjoined from making payments to the holders of other bond issues, to the exclusion of bonds of said fourth issue; and that a receiver be appointed to take possession and control of the moneys and funds of the district, pendente lite.

The following recital appears in the stipulation of facts:

"The sum of $7,500.00 tendered and paid into court by the defendants was derived from and taken out of the 'Sinking Fund.' The amount remaining in said fund is $61,-

---

382.50. The amount of principal and interest now due on all the bond issues is very greatly in excess of said amount."

Holders of other bonds of the same issue as those of appellant, and owners of bonds of the other nine issues appeared as interveners. Upon hearing, the court found the issues in favor of appellees and dismissed appellants' bill.

It is difficult to perceive upon what substantial ground appellants' claim can be based. Throughout the proceedings which resulted in the fourth issue of bonds, of which those of appellants form a part, it was reiterated that only the lands of the Hough Area could and would be benefited by the proposed improvement. This statement is found in the report of the chief engineer of the district by which the proceeding was initiated. It was repeated in the petition filed by the board of supervisors in the circuit court of New Madrid county, in the notice of levee hearing, in the finding of the court upon that hearing, and in its final decree. In the resolution authorizing the bond issue of $80,000 it was made clear that such bonds should be paid out of taxes levied upon the lands against which benefits had been assessed on account of the additional ditches provided for in the amendment of the reclamation plan, to wit, the 6,500 acres of the Hough Area. The bonds themselves contained the express statement that they and the coupons attached were payable out of the proceeds of taxes levied upon the lands and other property "declared to be benefited by said additional drainage system." Appellants place reliance upon the following language of the bonds appearing next before the testimonium clause:

"For the faithful performance of all covenants, recitals, and stipulations herein contained for the proper application of the proceeds of the taxes heretofore or hereafter levied and for the faithful performance in apt time, form and manner of every official act required and necessary to provide for the prompt payment of the interest and principal of this bond as the same mature, the full faith, credit and resources of said levee district are hereby irrevocably pledged."

This language is not susceptible of the interpretation sought to be placed upon it. The district did not pledge its resources for the payment of the bonds from its general funds. It did undertake to be responsible among other acts of performance "for the proper application of the proceeds of the taxes heretofore or hereafter levied" for the payment of the bonds as provided by the recitals in the bonds themselves, and this it has done by creating the Hough Area sinking fund.

The owners of no other lands in the district were notified of the pending of this amendment to the original reclamation plan. No other lands were benefited by the amendment. It is true that the New Madrid court in its decree found that said ditches, when constructed, would benefit the public health and would be of general public benefit and utility; but such general abstract terms form no substantial basis for assessing benefits against lands of the county expressly excepted from the benefit district. The trial court disposed of this point in the following language:

"Obviously, such an allegation and finding is so lacking in definiteness as not to constitute a benefit to the other lands in the District. So far as it appears, the statement is just as applicable to all those lands in New Madrid and Mississippi Counties, which are without the District, as it is to the lands which lie within the District. It is, in fact, a mere catch-phrase which comes down to us from an era wherein the belief was that malaria was caused by bad air."

It was the view of the trial court that property cannot be taxed for benefits when none exist. Any attempt by taxing authorities to impose a burden without a compensating advantage is power arbitrarily exerted, "amounts to confiscation and violates the due process provision of the Fourteenth Amendment." Myles Salt Co. v. Iberia Drainage District, 239 U. S. 478, 36 S. Ct. 204, 60 L. Ed. 392.

It is clear that lands in the district other than those of the Hough Area cannot be taxed for improvements made under the amended plan; but such would be the effect if payment of the fourth bond issue were made in whole or in part out of the general sinking funds of the district.

Appellants place reliance upon the cases of Breiholz et al. v. Board of Supervisors, 257 U. S. 118, 42 S. Ct. 13, 66 L. Ed. 159, and Rauch v. Himmelberger et al., 305 Mo. 70, 264 S. W. 658, 662. The former concerns a proceeding to clean and repair ditches previously constructed under an original plan of reclamation, the cost of which had been assessed generally against the lands of the district, and, therefore, differs widely from the case before us. The Rauch Case founds its holding largely upon the Breiholz Case; but, in any event, in the Rauch Case it expressly appears that the additional construction made

was necessary "to provide adequate drainage works for all the lands of the district." The distinction between that and the instant case is thus expressed in Judge Blair's opinion:

"The question in this case is not one of assessing local taxes against property which cannot be benefited, to pay for improving property which the improvement will benefit. Appellant has received full benefit."

Finally it is urged by counsel for appellants that the drainage district was without power thus to create a smaller district within the district, and to make a bond issue, such as this, payable exclusively out of taxes levied upon the lands of such smaller district. We do not find it necessary to pass upon this point. The contention, if sustained, might have the necessary effect of rendering the bonds invalid, and could not, therefore, benefit appellants. We are not called upon by the issues framed to pass on the validity of the bonds, but merely to determine the fund or funds from which they may or may not be paid. No one, so far as this record discloses, questions the validity of these bonds.

For the reasons stated it is our opinion that appellants' bonds, principal, and interest are payable only out of the Hough sinking fund supplied by taxes collected from the Hough Area, and not from the general sinking fund or funds of the district, and, therefore, that the decree of the district court must be affirmed.

It is so ordered.